UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | ) | |
|---|---|---|
| IN RE: | ) | Case No. 12-20140 (JKF) |
| | ) | |
| NOVA FINANCIAL HOLDINGS, INC., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION UNDER BANKRUPTCY RULE 9019 FOR APPROVAL
OF BONOMO SETTLEMENT AGREEMENT AND TRUSTEE
<u>SETTLEMENT AGREEMENT AND RELEASE</u>**

Michael H. Kaliner, Chapter 7 Trustee (the "**Trustee**") for the estate of Nova Financial Holdings, Inc. (the "**Debtor**" or "**Holdings**"), by and through his undersigned counsel, respectfully seeks entry of an Order approving the Settlement Agreement (the "**Settlement Agreement**") entered into by and among the Debtor, the Trustee, the Bonomo Plaintiffs (as hereinafter defined) and Pennsylvania Property and Casualty Insurance Guaranty Association ("**PP&CIGA**") (collectively, the "**Parties**"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit "A"** and made a part hereof. In support of this motion, the Trustee avers as follows: The Trustee also respectfully requests entry of an Order approving the Settlement Agreement between the Trustee and PP&CIGA (the "**Trustee Settlement**"). A true and correct copy of the Trustee Settlement is attached hereto as **Exhibit "B"** and made a part hereof.

<u>**JURISDICTION**</u>

1. This Court has jurisdiction over this matter, which is a core matter, pursuant to 28 U.S.C. §§ 1334 and 157(a), (b)(1) and (2)(A) and (B). The statutory predicate for the relief requested herein is Fed. R. Bankr. P. 9019.

2. Venue in this Court is predicated upon 28 U.S.C. § 1409.

## BACKGROUND

### A. The Bankruptcy Filing

3. On or about October 30, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**"). The Trustee was appointed on October 31, 2012.

4. The Debtor is the corporate parent of NOVA Bank (the "**Bank**"). In October 2012, the Bank failed and the Federal Deposit Insurance Corporation (the "**FDIC**") was appointed Receiver for NOVA Bank (in its capacity as Receiver for NOVA Bank, the "**FDIC-R**").

### B. The Policy and the Actions

5. Anthony Bonomo and Mary Ellen Bonomo (collectively, the "**Bonomo Plaintiffs**") were issued a $4.5 million loan (the "**Loan**") by the Bank and $2.5 million of the loan proceeds were used to purchase stock of Holdings.

6. Prior to the Petition Date, BancInsure, Inc. ("**BancInsure**") issued an Extended Professional Liability Insurance Policy, designated Policy No. PLI 0011742 (the "**Policy**") to Holdings, which provides executive liability coverage for claims made during the policy period from October 31, 2010 through October 31, 2010, subject to an extended reporting period through October 31, 2011.

7. On June 16, 2011, the Bonomo Plaintiffs filed suit against the Bank and Holdings in the United States District Court for the Eastern District of Pennsylvania styled *Bonomo v. Nova Financial Holdings, et al.*, Case No. 11-cv-4762, alleging securities fraud, common law fraud, breach of fiduciary duty and unjust enrichment.

8. Prior to the Petition Date, three other groups of plaintiffs filed suit against Holdings and other defendants in the District Court and the Montgomery County Court of Common Pleas alleging somewhat similar claims. These actions are styled *Weiss v. Nova Financial Holdings, Inc. et al.*, Case No. 2:11-cv-05336 (the "**Weiss Action**") and *Hisey, et al. v. Nova Financial Holdings, Inc. et al.*, Case No. 2:11-cv-02604-EL (the "**Hisey Action.**") The case of *Musser v. Nova Bank*, No. 2011-16474 (the "**Musser Action**") was filed in the Montgomery County Court of Common Pleas and subsequently removed to the District Court as Case No. 13-cv-00823-NS. Collectively, the Hisey Action, Weiss Action, Musser Action and Bonomo Action are styled the "**Actions.**"

9. On February 22, 2013, the Bankruptcy Court entered an order that, as more specifically provided therein, lifted the automatic stay for the limited purpose of allowing BancInsure to pay the defense costs incurred by the Policy's insureds in defending the Actions.

10. On August 1, 2014, the District Court of Oklahoma County, Oklahoma entered an Order placing BancInsure into receivership and liquidation, thereby triggering certain statutory obligations on the part of PP&CIGA pursuant to the Pennsylvania Property and Casualty Insurance Guaranty Association Act, 40 P.S. § 991.1801 (the "**Act**"). Under the Act, PP&CIGA is authorized to pay claims covered under the Policy and to assert a right of subrogation against BancInsure's receivership estate.

11. Facing the realizations that additional time, effort, and attorneys' fees would be required to adjudicate the Bonomo Action and that defense costs would erode the coverage available under the Policy to satisfy any judgment obtained in the Bonomo Action, the Parties entered into settlement negotiations and ultimately arrived at the compromise reflected in the Settlement Agreement.

12. In addition, the Trustee and PP&CIGA have entered into a separate Settlement Agreement and Release to determine the amount of the Trustee's commission to be awarded for the Bonomo settlement of $375,000, the Weiss settlement of $679,000, the Hisey settlement of $920,079, and the Musser settlement of $230,000.

### RELIEF REQUESTED

13. The Trustee respectfully requests that the Bankruptcy Court approve the Settlement Agreement in accordance with Bankruptcy Rule 9019. Under the terms of the Settlement Agreement, and as more fully described therein, within fourteen (14) days after receipt of all closing documents, including a fully executed copy of the Settlement Agreement along with the Bankruptcy Court's final and non-appealable order approving the Settlement Agreement, PP&CIGA will pay $375,000. (the "**Settlement Amount**") to the Bonomo Plaintiffs.

14. Within five (5) business days after their receipt of the Settlement Amount, the Bonomo Plaintiffs will: (a) move to voluntarily dismiss with prejudice all of their claims in the Bonomo Action against the Settling Defendants (as that term is used in the Settlement Agreement) and (b) withdraw their proofs of claim filed in the Debtor's bankruptcy case.

15. The fees and costs of the Trustee's Bankruptcy Court-approved professionals shall be paid by PP&CIGA to the professionals, in accordance with the terms previously set out in the Bankruptcy Court's Order entered February 22, 2013 at Docket No. 55 and subject to prior Bankruptcy Court approval under 11 U.S.C. § 330.

16. The Trustee also respectfully requests that the Bankruptcy Court approve the Trustee Settlement and Release in accordance with Bankruptcy Rule 901. Under the terms of the Trustee Settlement and Release, and as more fully described therein, upon receipt of the

Bankruptcy Court's final and non-appealable Order approving the Trustee Settlement and Release, PP&CIGA will pay $15,000.00 (the **"Trustee Settlement Amount"**) to the Trustee.

## BASIS FOR RELIEF

17.     The law favors compromise. *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir.), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854 (1986). Compromises are a normal part of the bankruptcy process. *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163 (1968) ("In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.").

18.     Pursuant to Bankruptcy Rule 9019, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The standards for approval of a compromise settlement agreement in bankruptcy were articulated in *TMT Trailer Ferry*, *supra*. There, the United States Supreme Court set forth the following considerations that must be addressed in determining the fairness, reasonableness and adequacy of a proposed compromise or settlement:

- The probability of success in the litigation;
- The difficulties, if any, to be encountered in the matter of collection;
- The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and
- All other factors relevant to a full and fair assessment of the proposed compromise settlement.

*Id.* at 424-25. *See also In re Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986). The fourth factor has also been expressed in terms of "the paramount interest of the creditors." *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *A & C Properties*, 784 F.2d at 1381.

19. The duty incumbent upon the court is to determine whether the compromise is fair and equitable and is in the best interests of the estate. *TMT Trailer Ferry, supra; Martin*, 91 F.3d at 394; *In re RFE Industries, Inc.*, 283 F.3d 159, 165 (3d Cir. 2002); *Neshaminy Office Bldg.*, 62 B.R. at 803 ("In deciding whether to approve a settlement, the court must decide whether the proposed settlement is in the best interest of the estate.").

20. In assessing whether a compromise is reasonable, the court need not conduct a "mini-trial on the merits, but should 'canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Matter of Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 1999) (quoting *Neshaminy Office Bldg.*, 62 B.R. at 803); *In re Pennsylvania Truck Lines, Inc.*, 150 B.R. 595 (E.D.Pa. 1992); aff'd. 8 F.3d 812 (3d Cir. 1993). In order for a settlement under Bankruptcy Rule 9019 to be upheld on appeal, "there must be a substantial basis for the approval of [the] compromise, but when there is such a basis with articulate findings and conclusions, an appellate court may not reverse absent some other abuse of ... discretion." *In re Jackson Brewing Co.*, 624 F.2d 605, 608 (5th Cir. 1980).

21. The Bonomo Action involves highly complex and disputed claims on which the Bonomo Plaintiffs have a reasonable probability of prevailing. The Trustee believes that the complexity of the litigation weighs strongly in favor of approving the Settlement Agreement, as do the necessarily attendant expense, inconvenience, and delay. The Policy is a "wasting" policy, under which each payment of insurance proceeds – including payments made on account of defense costs – depletes the remaining balance available under the Policy. Absent a settlement, the cost of defending the Actions may very well deplete the proceeds of the Policy before the Bonomo Action can be litigated to completion.

22. Because the Settlement Amount will be paid from insurance proceeds as opposed to general assets of the estate, the only creditors who could potentially be impacted are the plaintiffs in the other Actions; other creditors will benefit from the settlement because, as a result of the settlement, the Bonomo Plaintiffs will not be sharing in any generally available assets of the Debtor's estate.

23. The recent insolvency of BancInsure threatens to further complicate collection. Insofar as PP&CIGA has stepped forward to pay the Settlement Amount (and will have subrogation rights against BancInsure), the Trustee submits that the approval of the Settlement Agreement is in the best interest of the Debtor's estate and creditors insofar as it will ensure prompt payment of the Settlement Amount, which might otherwise be substantially delayed if not jeopardized entirely by BancInsure's unfolding liquidation proceedings in Oklahoma.

24. Therefore, the Trustee believes that resolving the Bonomo Action on an amicable basis as more fully set forth in the Settlement Agreement is in the paramount interests of Debtor's estate and creditors.

25. The Trustee also believes that determining the amount of his commission by agreement with PP&CIGA is in the best interest of the Debtor's estate and creditors.

## NOTICE

26. Notice of this Motion has been given to: (i) the Office of the United States Trustee, (ii) the Parties (through their respective counsel), (iii) counsel for the plaintiffs in each of the Actions; (iv) BancInsure (through counsel for the Oklahoma receiver); (v) counsel for the Nonsettling Defendants (as that term is used in the Settlement Agreement); and (vi) all parties that have filed requests for notices in this Chapter 7 case under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested herein, the Trustee submits that no further notice of the Motion is necessary or required.

27.     No prior motion for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests this Bankruptcy Court to enter an Order, in the form annexed hereto, granting the Settlement Motion, approving the Bonomo Settlement and Trustee Settlement and granting such further relief as is just and equitable.

**MASCHMEYER KARALIS P.C.**

By: */s/ Paul B. Maschmeyer*
    PAUL B. MASCHMEYER
    LINDA ALLE-MURPHY
    1900 Spruce Street
    Philadelphia, PA 19103
    (215) 546-4500
    Attorneys for the Trustee

Dated: July 29, 2015